**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **TERESA DENISE BANKS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:13-cv-458 (MTT) (CHW) |
| | : | |
| **CAROLYN W. COLVIN,** | : | Social Security Appeal |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Teresa Denise Banks's application for benefits. Because the Commissioner's decision is based on the application of proper legal standards and is supported by substantial evidence, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff worked as a deputy sheriff for Bibb County from August 2007 until December 2008, when she stopped working due to back problems. (R. 58). In March 2009, Plaintiff underwent a lumbar fusion surgery. (R. 53, 326–27). In October 2009, Plaintiff filed an application for Title II benefits. (R. 81). Plaintiff returned to work as a sheriff's deputy from October 2009 until December 2009, (R. 58), and she later amended her alleged onset date to December 31, 2009, the date on which Plaintiff claims to have fallen down a flight of stairs, resulting in a broken leg and a crushed ankle. (R. 64). Thereafter, Plaintiff claims to have undergone five different surgeries on her spine and leg, (R. 64), some of which are evidenced by

medical records: a January 2010 "open reduction and internal fixation of the [] distal tibia,"[1] (R. 461–62); an April 2010 screw and plate removal, (R. 722); and a May 2010 "[t]ibial intramedullary rod" insertion. (R. 535).

Plaintiff's Title II application was denied initially in May 2010, (R. 81), and on reconsideration in October 2010, (R. 82), and a hearing was held before a reviewing administrative law judge ("ALJ") in January 2012. (R. 42–80). At the hearing's conclusion, the ALJ noted the lack of recent medical records on file, and she ordered a consultative examination, which Dr. Henry Clay performed in May 2012. (R. 78–79; 723–35). In her June 2012 unfavorable decision, though, the ALJ discounted portions of Dr. Clay's opinion, including a finding by Dr. Clay that Plaintiff could not ambulate "without using a wheelchair, walker, or 2 canes or 2 crutches." (R. 735). The ALJ also determined that Plaintiff did not meet the criteria for disability under Listing 1.04C, which requires, among other things, an "inability to ambulate effectively."

Plaintiff now seeks review before this Court, arguing (1) that the ALJ improperly discounted Dr. Clay's opinion; and (2) that the ALJ should have found Plaintiff disabled under Listing 1.04C. Because the record does not support Plaintiff's arguments, it is recommended that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as

---

[1] Plaintiff's attorney stated at Plaintiff's administrative hearing: "[A] lot of [Plaintiff's] records indicate an injury to the left leg, but that is incorrect. It is the right leg." (R. 53).

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISAIBLITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the ALJ in this case made the following findings. At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since December 31, 2009, her alleged onset date. (R. 20). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "status post IM rod of the right tibia, status post poster[o]lateral fusion at L4-L5 with pseudoarthrosis, status post open reduction internal fixation of the right ankle, obesity, osteoarthritis of the right knee, and diabetes mellitus." (R. 20). The ALJ also found that Plaintiff suffered from the following "non-severe" impairments: "status post [colectomy], status post hysterectomy, hypertension, and history of migraine headaches." (R. 21).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling one of the listed impairments, including Listing 1.04C. (R. 23). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform:

> [S]edentary work, except the claimant requires the ability to alternate between sitting and standing every thirty minutes, but this does not require her to leave the work station. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, and scaffolding. The claimant can tolerate up to frequent exposure to workplace hazards such as open machinery and unprotected heights. She can tolerate no more than occasional exposure to temperature extremes and vibration.

(R. 23)

Based on this RFC assessment the ALJ found, at step four, that Plaintiff was unable to perform any of her past relevant work. (R. 33). At step five, however, the ALJ found that Plaintiff could perform the requirements of representative occupations such as "Label Cutter" and "Ticket Checker." (R. 34). Therefore, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff's primary argument is that the ALJ erred in failing to find Plaintiff "disabled" under Listing 1.04C, which requires a showing of:

> Disorders of the spine (e.g., . . . spinal stenosis . . . ), resulting in compromise of a nerve root . . . or the spinal cord. With:
>
> • • •
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

In arguing that she meets Listing 1.04C's requirements, Plaintiff relies heavily on the opinion of Dr. Henry Clay, a consultative examiner who indicated, in an April 2012 "medical source statement," that Plaintiff could not ambulate "without using a wheelchair, walker, or 2 canes or 2 crutches." (R. 735). Although the ALJ assigned "great weight to the objective findings in the narrative portion of [Dr. Clay's] report," she assigned "no weight" to Dr. Clay's "medical source statement." (R. 33). According to Plaintiff, this "[p]icking and choosing" among the different sections of Dr. Clay's examination report was improper, and also constitutes grounds for reversal. (Doc. 13, pp. 8, 11).

With regard to Listing 1.04C, substantial evidence supports the ALJ's finding that Plaintiff did "not prove[] an inability to ambulate effectively." (R. 31). Dr. Winston Jeshuran, a treating physician and the surgeon of record for Plaintiff's January, (R. 461), April, (R. 722), and May 2010 surgeries, (R. 535), repeatedly indicated in a series of follow-up examinations that

---

[2] "Inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

Plaintiff did not suffer from the sort of drastic ambulatory restrictions sufficient to satisfy Listing 1.04C's "inability to ambulate effectively" requirement. In February 2010, Dr. Jeshuran stated that Plaintiff was "doing well," and that he planned to "take [Plaintiff] out of her cast, place her in a walking boot, [and] increase her ambulation." (R. 714). In March 2010, Dr. Jeshuran noted that Plaintiff was "able to ambulate in her Equalizer boot." (R. 713). In April 2010, Dr. Jeshuran stated that Plaintiff had been "ambulating with no pain until last Thursday," when Plaintiff began experiencing pain "at the superior aspect of her hardware on the medial side of her tibia." (R. 712). In June 2010, following surgeries in April and May for screw and plate removal and for a "[t]ibial intramedullary rod" insertion, Dr. Jeshuran noted that Plaintiff was "doing well," and that she should "weight bear as tolerated [and] increase her activity." (R. 711). Later in June, Dr. Jeshuran noted that Plaintiff was "ambulat[ing] well." (R. 710). These treating source records, all of which the ALJ discussed at length in her opinion, (R. 26–28), constitute "substantial evidence" in support of the ALJ's step three finding that Plaintiff failed to satisfy the criteria for disability under Listing 1.04C.

Substantial evidence also supports the ALJ's decision to discount the "medical source statement" of Dr. Henry Clay, a consultative examiner. As noted by the ALJ, (R. 33), many of the findings listed in Dr. Clay's narrative summary, (R. 723–25), and his "all systems form," (R. 726–29), are not consistent with the findings listed in his standard-form "medical source statement." (R. 730–35). As is relevant to the instant social security appeal, for example, Dr. Clay inconsistently stated both that Plaintiff did not use an assistive device for walking, (R. 728), and also that Plaintiff could not ambulate "without using a wheelchair, walker, or 2 canes or 2 crutches." (R. 735). This inconsistency alone was grounds for discounting Dr. Clay's opinion, and the ALJ certainly did not err by identifying the inconsistency and by

choosing to credit some of Dr. Clay's findings over others. Indeed, contrary to Plaintiff's argument, this "picking and choosing" is an ALJ's principal duty. *See, e.g.*, *Battle v. Astrue*, 243 F. App'x 514, 523 (11th Cir. 2007) ("When deciding the case, it is the ALJ's duty to weigh the evidence and testimony [and] to resolve the conflicts in the evidence and testimony").

Dr. Clay's "medical source statement" is also deficient because the findings within it appear to be based on Plaintiff's own subjective statements, as opposed to Dr. Clay's objective medical findings. As noted by the ALJ, (R. 33), nearly all of the non-checkbox findings in Dr. Clay's "medical source statement" begin with "she states." (R. 730–35). Because the ALJ found Plaintiff, herself, to be less than credible, (R. 30), and because the findings in Dr. Clay's "medical source statement" appear to be based on Plaintiff's discredited subjective statements, there is no basis for the Court to conclude that the ALJ erred in discounting Dr. Clay's "medical source statement."

To summarize, then, "substantial evidence" supports both the ALJ's step-three findings and the ALJ's decision to discount a portion of Dr. Clay's consultative examination report. Because the "findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive," *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Commissioner's decision should be affirmed.

## CONCLUSION

After a careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of December, 2014.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge